NOT FOR PUBLICATION

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01124-01-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Robert Edward Berger, | |
| Defendant. | |

On March 12, 2021, Defendant Robert Edward Berger was convicted of wire fraud resulting in losses of over $6,000,000 to victims. (Doc. 193.) Before his conviction in this matter, Defendant used $649,843.16 of those fraud proceeds to retire a secured loan on a residence in Huntington Beach, California, then sold the residence and wired the net proceeds of that sale—$882,355.26—to an overseas SwedBank account under the control of his sister-in-law, Elisabet Rehus (hereafter Rehus). On July 1, 2020, Rehus returned the entire amount to the United States, where it remained in the custody of the United States Marshal Service's Seized Asset Deposit Fund Account pending further Order of this Court.

The Court entered a Preliminary Order of Forfeiture on the entire amount on September 8, 2020, pursuant to Fed. R. Crim. P 32.2(b)(2), and ordered the government to provide notice to any potential claimant of the Preliminary Order as required under the rule. (Doc. 148.) Both Rehus and Defendant's spouse, Jamie Howard[1] (hereafter Howard),

---

[1] Several documents relevant to the forfeiture issue bear the name "Jamie L. Berger," which Howard used at some point during her marriage to Defendant.

filed claims in this matter. Neither claimant disputes the United States is entitled to forfeiture of that portion of the sale proceeds derived from Defendant's fraudulent conduct, to be applied to victim restitution; indeed, Rehus, Howard and the government stipulated that the $649,843.16 traceable as proceeds of Defendant's fraud was subject to forfeiture. (Doc. 219.) Rather, Rehus and Howard each claim the remaining excess—$232,512.10—which they and the government stipulated and the Court agreed was not subject to forfeiture. (Doc. 220.) Pursuant to Rule 32.2(c)(1)(B), the Court ordered both third party claimants could engage in discovery, and both have filed competing Motions for Summary judgment as provided by Fed. R. Crim. P. 32.2(c)(1)(B) (providing that "[w]hen discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56").

Those Motions (Doc. 221, "Howard MSJ"; Doc. 223, "Rehus MSJ") are now fully briefed. The Court has considered them and all responses and replies thereto, as well as supporting and controverting statements of fact (Docs. 222-226; 228-232).

## I. BACKGROUND

On December 20, 1999, a deed issued to Defendant, "Robert Berger, a single man," granting him ownership of a condominium in Huntington Beach California. (Doc. 223-2 at 3-4.) On April 24, 2000, Defendant, again described as "a single man," executed a deed of trust on the Huntington Beach condominium for the benefit of Option One Mortgage Corporation, securing a loan to him of over $308,000. (Doc. 223-3.) Almost six years later, on April 2, 2006, Defendant and Howard were married in Las Vegas, and thereafter resided together in the Huntington Beach home. Approximately seven months after their wedding, on November 1, 2006, Lauryn A. Turk, an Orange County California notary public, notarized a document bearing the purported signatures of Jamie Lynn Berger and Robert Berger. (Doc. 223-6.) The document, entitled "Interspousal Transfer Grant Deed," purports to grant Robert Berger "as his sole and separate property" whatever interest Jamie Lynn Berger had in the Huntington Beach condominium.

In 2012, a petition for summary dissolution of the marriage Jamie Berger and Robert Berger, purporting to bear both of their signatures, was filed in the Superior Court of

California for Orange County. (Doc. 212-2 at 2-3.) The family court opened the summary dissolution matter as Cause No. 12D004667. Attendant to that filing was the submission of a document dated March 11, 2012, bearing the handwritten title "Property Settlement," and purporting to bear the signatures of Jamie L. Berger and Robert Berger. The document stated, in its entirety, that "we agree we have no property to separate. We each live with family members." (Doc. 212-2 at 7.) On May 11, 2012, the family court entered an order indicating as follows:

> The Court Orders [a] judgment of dissolution of marriage and/or domestic partnership will be entered, and the parties are restored to the status of single persons, effective [] Nov[ember] 12, 2012.

(Doc. 212-2 at 5.) The effect of the decree, had it stood, would have been to vest in Defendant ownership not only of any separate property he had, but also of several pieces of property acquired during the marriage which by operation of California law would have belonged to the marital community.

In 2014, Howard moved the family court to set aside that judgment, asserting she did not sign the petition and only learned of the matter and dissolution decree in 2013. On May 2, 2014, Judge Lancet Miller granted that motion and set aside the summary dissolution after finding fraud upon the court (Doc. 222-3 at 2); she then dismissed the petition. (Doc. 228-1 at 10.)

Defendant thereafter filed a petition for dissolution of marriage with no children on June 2, 2014, and a new case—No. 14D004924—was opened in the same court. On June 5, 2018, Judge Franz E. Miller entered an order in the contested matter ordering Defendant "not to sell the property pending further order of the court." (Doc. 222-5 at 3.) Judge Miller also continued the matter. Defendant sold the Huntington Beach condominium in July 2018 and sent the proceeds to Rehus in Sweden. On November 6, 2018, the family court held a hearing and entered an order stating that the "matter is moot pursuant to the verbal stipulation of both attorneys." (Doc. 226-1 at 2.)

## II.  LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.  ANALYSIS

Rehus, both in her own Motion for Summary Judgment and in opposing the Howard

MSJ, argues that the condominium from whose sale she received the proceeds was her brother-in-law's separate property at the time he acquired it and that character of ownership never changed. Alternatively, she argues that if the condominium's status as Defendant's separate property did change after his marriage to Howard, several events or actions taken by Howard restored the condominium's status to Defendant's separate property, allowing him to transfer the proceeds to Rehus as he did. Those actions, Rehus argues, include: first, the execution of the Interspousal Transfer Grant Deed on November 1, 2006 and purporting to bear Howard's notarized signature; second, Howard's execution of the handwritten "property settlement" dated March 11, 2012, which was filed with the first petition for summary dissolution of marriage between Defendant and Howard; and third, Howard and Defendant are now divorced and the Huntington Beach condominium was not adjudicated community property.

Howard, in her Motion for Summary Judgment and in opposing the Rehus MSJ, argues: first, while the Huntington Beach condominium was initially Defendant's separate property, after they married the community gained an interest in it; second, the purported "Interspousal Transfer Grant Deed" is of no effect because her signature is a forgery, as was her signature on the 2012 petition for summary dissolution of marriage; third, the 2012 divorce decree, in support of which Howard and Defendant executed a purported "Property Settlement," was dismissed and the dissolution decree set aside after a finding of fraud upon the court[2]; and fourth, the 2014 petition for dissolution is still pending before the family court, which entered an order in June 2018 that is still in force, prohibiting Defendant from selling any of the properties.

The parties agree, as they must, that when Defendant purchased the condominium

---

[2] Howard claims repeatedly that the Orange County family court judge based her finding of fraud upon the court on the forgery of Howard's signature on the 2012 petition for summary dissolution, and at least once on the forgery of Howard's signature on the 2006 Interspousal Transfer Grant Deed. Neither of these assertions have any factual support in the record. Rather, the family court judge based her finding of fraud on the fact that the parties had asserted, in their "Property Settlement" and on the petition, the marital community had no property when there were in fact, four properties acquired during the marriage.

in 1999, it was his separate property. *In re Marriage of Rossin*, 172 Cal. App. 4th 725, 732 (Cal. App. 2009) (recognizing that property owned before marriage is separate property and not considered community property). And of course simply because two people marry and use the separate property, such use does not change the character of the ownership interest of the property. *Id.* at 734. Rather, a spouse's separate property changes to community property only through the doctrine of transmutation, described in relevant part as follows:

> Generally, when community property is used to reduce the principal balance on a promissory note secured by a deed of trust on a spouse's separate property, the community obtains a pro tanto interest in the property pursuant to the Marsden/Moore rule."

*In re Eberts*, No. CV 12-08464 MWF, 2013 WL 3467114, at *6 (C.D. Cal. July 10, 2013). *Eberts* holds that when the community in a marriage pays down principal, the community may receive a dollar-for-dollar reimbursement as well as *a pro tanto* (as far as it can go) share of the property's appreciation from the date of the marriage to the date of the separation.

Howard fails to point to any documentary evidence either to support her assertion that the community gained any interest in the Huntington Beach condominium, through transmutation or otherwise. She merely asserts in her motion that she "has an indisputable priority community property claim to the funds" at issue; and "Jamie's community property claim attaches to the whole amount received from the sale." (Howard MSJ at 1,8.) The only support Howard includes in her Statement of Facts for this argument is her Declaration containing the following two assertions: 1) that Defendant "had purchased the [Huntington Beach condominium] in approximately 2000. However, the community had an interest in it"; and 2) that Defendant "opened a revolving line of credit on the home. The loan had been paid off several times with the money [Howard] generated." (Doc. 222-1 at ¶ 9, 11.) The first of these statements is a conclusory statement of law which the Court disregards

as such. *Taylor*, 880 F.2d at 1045. And the second statement, although it contains a factual assertion, fares no better, as the assertion is supported by no factual data as required by Rule 56. *Id*. The Court allowed the parties discovery to support their summary judgment motions, and that discovery is now long closed. Howard points to no evidentiary support for her statement that Defendant took out a line of credit on the condominium that was repaid with her, or the community's, money. She has referenced no loan documentation, no payment records and no statements demonstrating she had income at the relevant time. At the same time, Rehus has sidestepped controverting Howard's above statements of fact as to transmutation. Thus, neither petitioner has demonstrated as a matter of law whether or not the condominium transmuted from defendant's separate property to community property. While the Court harbors serious doubts Howard will be able to prove transmutation at a hearing in light of her failure to point to evidence supporting her assertion, the fact issue is, for now, controverted.

As a result, the Court must analyze whether uncontroverted evidence of subsequent actions or events resolve ownership of the residual funds as a matter of law. First, neither party is entitled to summary judgment on the issue of whether the purported "Interspousal Transfer Grant Deed" was valid and thus restored (if necessary) the Huntington Beach condominium to Defendant as his separate property. Rehus is correct that a notarized signature bears a presumption of authenticity under California law, and Howard has not come forward with a statement or testimony from the notary, expert handwriting analysis or otherwise to overcome that presumption. But Howard has pointed to dissimilarities between her known signatures and the questioned document to support her assertion of forgery. The Court will hear evidence and make a credibility determination on the issue. Similarly, the evidence on the effect, if any, of the "Property Settlement" document Howard acknowledges executing in 2012 is controverted and the Court will hear argument on that evidence as well.

Finally, neither party is entitled to summary judgment on the issue of whether: 1) dissolution proceedings in the later Orange County family court matter, No. 14D004924,

are concluded and the matter terminated; 2) if so, whether Defendant and Howard are now divorced; and 3) in any event, whether that Court's June 5, 2018 order prohibiting Defendant from liquidating any of the properties is extinguished and if so, as of when. The parties provided no definitive documentation or other evidence answering any of the above three questions, all of which are germane to the ultimate issue here. Rehus unhelpfully points to a November 6, 2018 form order bearing, under the printed text "IT IS ORDERED:", the following handwritten addition: "matter is moot pursuant to the verbal stipulation of both attorneys." This tells the Court nothing. The Court does not know from this hand interlineation, devoid of context as it is, whether the "matter" is the overall matter—the dissolution proceeding; the matter of the order prohibiting property sale; or some other attendant matter entirely. Howard is no more helpful on this issue, appearing to sidestep the November 6, 2018 order altogether and merely insist that the divorce proceedings are still ongoing and the order prohibiting sale of property is still in place.

The Court declines the invitation to decide the status of over $230,000 on one of several equally plausible interpretations of that sentence fragment. The Court will hold an evidentiary hearing on this matter to resolve all issues necessary to the determination of ownership of the funds. The parties shall be prepared to present evidence or argument on transmutation of property interest in the condominium; the authenticity of the "Interspousal Transfer Grant Deed"; the effect of the Property Settlement; and the status of matter No. 14D004924, to include docket entries, transcripts and or live or deposition testimony of Messrs. Vu and Drake, respective counsel for Defendant and Howard in divorce the matter, if the parties deem it necessary.

**IT IS ORDERED** denying Howard's Motion for Summary Judgment (Doc. 221).

**IT IS FURTHER ORDERED** denying Rehus's Motion for Summary Judgment (Doc. 223).

**IT IS FURTHER ORDERED** setting an evidentiary hearing in this matter on Monday, April 4, 2022, at 9:00 a.m. Arizona Time in Courtroom 505. All parties, counsel and witnesses shall appear remotely via Zoom. No one is to appear in person. The Court

having ordered limited discovery in preparation for dispositive motion practice, and that discovery period having expired, no additional discovery is permitted. Each party will have 90 minutes for examination of any witnesses, presentation of other evidence already disclosed, and argument. The Court expects counsel to be efficient and avoid repetition. Defendant Berger having waived his interest in the residual funds at issue, neither his nor his counsel's virtual presence is required.

Dated this 14th day of February, 2022.

Honorable John J. Tuchi
United States District Judge