NOT FOR PUBLICATION

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  Plaintiff,  v.  Robert Edward Berger,  Defendant. | No. CR-18-01124-01-PHX-JJT  **ORDER** |

On March 12, 2021, Defendant Robert Edward Berger was convicted of wire fraud resulting in losses of over $6,000,000 to victims. (Doc. 193.) Before his conviction in this matter, Defendant used $649,843.16 of those fraud proceeds to retire a secured loan on a residence in Huntington Beach, California, then sold the residence and wired the net proceeds of that sale—$882,355.26—to an overseas SwedBank account under the control of his sister-in-law, Elisabet Rehus (hereafter Rehus). On July 1, 2020, Rehus returned the entire amount to the United States, where it remained in the custody of the United States Marshal Service's Seized Asset Deposit Fund Account pending further Order of this Court.

The Court entered a Preliminary Order of Forfeiture on the entire amount on September 8, 2020, pursuant to Fed. R. Crim. P 32.2(b)(2), and ordered the government to provide notice to any potential claimant of the Preliminary Order as required under the rule. (Doc. 148.) Both Rehus and Defendant's spouse, Jamie Howard[1] (hereafter Howard),

---

[1] Several documents relevant to the claim issue bear the name "Jamie L. Berger" or "Jamie Lynn Berger," which Howard used at some point during her marriage to Defendant.

filed claims in this matter (Docs. 157, 167). Neither claimant disputed the United States was entitled to forfeiture of that portion of the sale proceeds derived from Defendant's fraudulent conduct, to be applied to victim restitution; indeed, Rehus, Howard and the government stipulated that the $649,843.16 traceable as proceeds of Defendant's fraud was subject to forfeiture. (Doc. 219.) Rather, Rehus and Howard each claim the remaining excess—$232,512.10—which they and the government stipulated and the Court agreed was not subject to forfeiture. (Doc. 220.) Pursuant to Rule 32.2(c)(1)(B), the Court ordered both third party claimants could engage in discovery, and both filed competing Motions for Summary judgment as provided by Fed. R. Crim. P. 32.2(c)(1)(B) (providing that "[w]hen discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56").

Upon ripeness of Howard's and Rehus's Cross-Motions for Summary Judgment (Doc. 221, "Howard MSJ"; Doc. 223, "Rehus MSJ"), and consideration of those Motions, as well as the responses and replies thereto and supporting and controverting statements of fact (Docs. 222-226; 228-232), the Court concluded it could not grant summary judgment to either party as issues of fact remained. (Doc. 234.) The Court ordered an evidentiary hearing which proceeded on April 4, 2022, and for which the Court, in its Order, directed the parties to address the controverted issues it identified, including the authenticity of a notarized Interspousal Transfer Grant Deed (hereafter "ITGD") dated November 1, 2006 bearing the signature reading "Jamie L. Berger"; the status of the dissolution proceedings between Howard and Defendant in Orange County California Family Court matter #14D004924; and the meaning and operation of a handwritten notation on an order of the Family Court in Matter #14D004924 stating, without further explanation, "Matter is moot pursuant to the verbal stipulation of both attorneys." (Doc. 237.)

Upon conclusion of the hearing, the Court took the matter under advisement and allowed the parties the opportunity to provide optional briefing on the law of California as to whether a valid ITGD conveys a future interest absent express warranty. Both claimants'

counsel elected to file such letter briefing. (Docs. 240, 241.)[2]

### I. FACTUAL BACKGROUND

The Court has recited in detail many of the facts necessary to the decision now before it in its February 14, 2022 Order setting the matter for evidentiary hearing. (Doc. 234.) Rather than referring to that separate Order, for the sake of completeness of analysis, the Court will repeat those facts here, along with those adduced at the evidentiary hearing.

On December 20, 1999, a deed issued to Defendant, "Robert Berger, a single man," granting him ownership of a condominium in Huntington Beach California. (Doc. 223-2 at 3-4.) On April 24, 2000, Defendant, again described as "a single man," executed a deed of trust on the Huntington Beach condominium for the benefit of Option One Mortgage Corporation, securing a loan to him of over $308,000. (Doc. 223-3.) Almost six years later, on April 2, 2006, Defendant and Howard were married in Las Vegas, and thereafter resided together in the Huntington Beach home. Approximately seven months after their wedding, on November 1, 2006, Lauryn A. Turk, an Orange County California notary public, notarized a document bearing the purported signatures of Jamie Lynn Berger and Robert Berger. (Doc. 223-6.) The document, entitled "Interspousal Transfer Grant Deed," purports to grant Defendant "as his sole and separate property" whatever interest Howard had in the Huntington Beach home.

In 2012, a petition for summary dissolution of the marriage of Jamie Berger and Robert Berger, purporting to bear both of their signatures, was filed in the Superior Court of California for Orange County's family court division. (Doc. 212-2 at 2-3.) The family court opened the summary dissolution matter as Cause No. 12D004667. Attendant to that filing was the submission of a document dated March 11, 2012, bearing the handwritten

---

[2] The Court commends the able and very professional representation of both counsel in this matter. As the issues and relevant factual background spanned a lengthy period and multiple other legal proceedings in various jurisdictions, in none of which current counsel were involved, reconstruction of events and surrounding facts was an exceptional challenge and necessarily resulted in a disjointed presentation. Both counsel's performance minimized confusion, improved comprehension and did so in a collegial and respectful way.

title "Property Settlement," and purporting to bear the signatures of Jamie L. Berger and Robert Berger. The document stated, in its entirety, that "we agree we have no property to separate. We each live with family members." (Doc. 212-2 at 7.) On May 11, 2012, the family court entered an order indicating as follows:

> The Court Orders [a] judgment of dissolution of marriage and/or domestic partnership will be entered, and the parties are restored to the status of single persons, effective [] Nov[ember] 12, 2012.

(Doc. 212-2 at 5.) The effect of the decree, had it stood, would have been to terminate Howard's marriage to Defendant and vest in Defendant ownership not only of any separate property he had, but also of several other pieces of property acquired during the marriage which by operation of California law might well have belonged to the marital community. But it did not stand.

In 2014, Howard moved the family court to set aside that judgment, asserting she did not sign the petition and only learned of the matter and dissolution decree in 2013. On May 2, 2014, Judge Lancet Miller granted that motion and set aside the summary dissolution after finding fraud upon the court[3] (Doc. 222-3 at 2); she then dismissed the

---

[3] Both Claimants Howard and Rehus have characterized Judge Lancet-Miller's finding of fraud on the court to their respective benefit, with Howard claiming the fraud was Defendant's forgery of her signature on the "Property Settlement" and the Petition to initiate the summary dissolution, and Rehus claiming it was Howard's statement in the "Property Settlement" document that she owned no real property. The actual basis for the finding is to no one's benefit, however, because it erodes the credibility of both Defendant—on whom Rehus relies for factual assertions supporting her position—and Howard. While Judge Lancet-Miller, during the May 2, 2014 hearing to set aside the summary dissolution decree in the original Case No. 12D004667, certainly observed the possibility that Defendant forged Howard's signature on the documents (Tr. Exh. Rehus 7 at 8), that is not the issue on which she based her finding. Rather, Judge Lancet-Miller makes clear that the fraud on the court she found was the misrepresentation by both Defendant and Howard that there was no real property to be addressed in the dissolution proceeding:

> OK. So I talked to you guys briefly, reviewed all the pleadings. You were not entitled to file a summary dissolution; by virtue of everybody's declaration, lots of real property was owned by the parties. Whether wife knew about it or not, I think there was a fraud committed on the court by filing a summary

- 4 -

petition. (Doc. 228-1 at 10.)

Defendant thereafter filed a petition for dissolution of marriage with no children on June 2, 2014, and a new case—No. 14D004924—was opened in the same court. On June 5, 2018, Judge Franz E. Miller entered an order in the contested matter ordering Defendant "not to sell the property pending further order of the court." (Doc. 222-5 at 3.) No party contests this Order referred to the property at issue here—the Huntington Beach home. Judge Miller also continued the matter. Defendant nonetheless sold the Huntington Beach condominium in July 2018 (Tr. Exh. Rehus 13) and within days sent the proceeds to Rehus's Swedbank account overseas.

A month later, on August 20, 2018, Howard petitioned the Orange County Family Court for—and received—an emergency Order giving her exclusive temporary use, possession and control of the sold Huntington Beach home. (Tr. Exh. Rehus 14.) But the purchasers of the home, the Caricchios, already had taken possession of the home upon closing and were occupying it. The court set a return hearing on the temporary order for

> dissolution petition. [] It does not appear to be the wife's signature, but just by the statement, "neither of us has any interest in any real property anywhere," that is not a true statement because at the time of the filing, whether it was separate community [property] previously divided or not, by virtue of husband's own declaration [you] could not have filed a summary dissolution; you had three to five pieces of real property, a business and various other assets well in excess of [threshold]. And it also says, "neither of us has any separate assets." [] So you could not have done that, it's a fraud on the court, it's an—and no property was ever adjudicated or divided. And when you stated, "we have no community assets or liabilities," none of that was really true. [] And therefore I'm going to grant the motion to set aside based on fraud and—so that judgment on summary dissolution is set aside, the case has been dismissed because you are not entitled to file a summary dissolution and one of you will need to file a petition for dissolution of marriage.

(Tr. Exh. Rehus 7 at 9-10.) The facts are different than Howard urged this Court to believe, in that she was aware of the first dissolution proceedings when she signed the "Property Settlement" document at her therapist's office on March 11, 2012, as she testified she did. This line of argument calls Howard's credibility into question for the Court, at least as to some issues. However, the Court also observes that Defendant's credibility is nearly non-existent in light of the nature and extent of his conduct associated with the fraud conviction before this Court and his clear misrepresentations to the family court as set forth above. Thus to the extent Rehus relies on any of Defendant's representations in this episode, they provide little or no reliable support for her arguments either.

September 5, 2018, at which Ms. Howard, Defendant and the Caricchios as third parties all were represented, and the court learned escrow had closed and the sale had been completed. The family court thereafter continued the matter to November 6, 2018.

On the day before that hearing in the family court matter, the Caricchios, having learned that Ms. Howard was contesting Defendant's sale of the home to them, filed their own quiet title and declaratory action in the civil division of Orange County Superior Court on September 4, 2018. (Tr. Exh. Rehus 17.) In their Complaint, the Caricchios alleged that Ms. Howard and Defendant "claim[ed] title [or] interest in the property adverse to [the Caricchios'] title, and their claims, and each of them, constitute a cloud on [the Caricchios'] title." (Tr. Exh. Rehus 17 at 2.) The Complaint further alleges that Defendant took title to the property as an unmarried man but later married Ms. Howard, and that their marriage was in the process of dissolution pending resolution of Case # 14D004924. (Tr. Exh. Rehus 17 at 3.) The Caricchios also alleged that "notwithstanding the Dissolution Action, at all times prior to the sale of the property to [the Caricchios], record title to the property was held solely by Robert Berger as a single man or as a married man as his sole and separate property," but that they learned on August 21, 2018 that Ms. Howard was then claiming a community property interest in the home. (Tr. Exh. Rehus 17 at 4.)

In their claim for quiet title, the Caricchios expressly sought "an adjudication that Plaintiffs [] took the property free and clear" of Ms. Howard's community property claim of interest in it. (Tr. Exh. Rehus 17 at 6-7.) In their declaratory action claim, they also expressly sought a declaration that they "took their interest in the Property free and clear of any claim by [Ms. Howard] or any other Defendant." (Tr. Exh. Rehus 17 at 7.) The Caricchios' Complaint finally prayed "for an adjudication that [Ms. Howard had] no right, title, estate, lien of interest in the Property" and "a declaration [] consistent with Plaintiffs' contentions and allegations as set forth herein." (Tr. Exh. Rehus 17 at 8.)

At the family court's November 6, 2018, hearing, after a conference with counsel for Defendant, Ms. Howard and the Caricchios, the court entered an order stating in a hand notation that the "matter is moot pursuant to the verbal stipulation of both attorneys" (Doc.

226-1 at 2), but without further stating what "matter" was mooted, and continuing the family court trial until January 15, 2019. (Tr. Exh. Rehus 14C.) At the January 15, 2019 hearing, upon stipulation of the parties, the family court division ordered another continuance until the Caricchios' quiet title action was resolved in the civil division. (Tr. Exh. Rehus 14D.)

On May 13, 2019, the Orange County Superior Court's civil division entered Judgment for the Caricchios on their quiet title and declaratory action after the court found both Defendant and Howard defaulted and failed to appear, answer or defend. (Tr. Exh. Rehus 18.) As part of the Judgment, the court ordered that Howard had "no right, estate, title, lien or interest whatsoever in the real property" at issue. (*Id.*) Ms. Howard sought to vacate the default judgment and to file an Answer to the Caricchios' complaint out of time (Tr. Exh. Rehus 19), but the court denied the motion on July 8, 2019, finding she had not shown that the entry of default or default judgment was due to mistake, inadvertence, surprise, excusable neglect, lack of notice, fraud or mistake.  (Tr. Exh. Rehus 20.)

A month later on August 8, 2019, the family court held a hearing and observed that the Caricchios' quite title and declaratory action had been resolved with finality against Howard and Defendant, and the Caricchios were "now the owners" of the Huntington Beach property. (Tr. Exh. Rehus 14H.) The court ordered "all proceeds stemming from the escrow and/or the sale of the property received by either [Defendant or Howard] to be paid to an interest-bearing trust account" maintained by counsel, and "[f]unds are only to be disbursed by written agreement of the parties or by a court order." (Id.) Finally the family court ordered that it "will not set any future hearings on this matter." Since the August 8, 2019 order, there has been no activity in the family court dissolution matter other than the withdrawal of counsel for both Defendant and Howard.

## II. ANALYSIS

In resolving the competing claims of Howard and Rehus to the remaining $232,512.10, the Court must determine 1) whether Howard ever had or developed a

community property interest in the Huntington Beach property, and if she did, whether it was extinguished or continues; and 2) whether the pendency of the dissolution matter before the Orange County Superior Court Family Division, and its June 5, 2018, August 20, 2018, and or August 8, 2019 orders bar this Court from entering relief for either party and require return of the remaining funds to a registry or trust account under the authority of the family court. The Court will address these issues in order.

### A. The Character of the Huntington Beach Property and any Proceeds from its Sale

The parties agree, as they must, that when Defendant purchased the condominium in 1999, it was his separate property. *In re Marriage of Rossin*, 172 Cal. App. 4th 725, 732 (Cal. App. 2009) (recognizing that property owned before marriage is separate property and not considered community property). Thereafter, simply because two people marry and use the separate property, such use does not change the character of the ownership interest of the property. *Id.* at 734. Rather, a spouse's separate property changes to community property only through the doctrine of transmutation, described in relevant part as follows:

> Generally, when community property is used to reduce the principal balance on a promissory note secured by a deed of trust on a spouse's separate property, the community obtains a *pro tanto* interest in the property pursuant to the *Marsden/Moore* rule.

*In re Eberts*, No. CV 12-08464 MWF, 2013 WL 3467114, at *6 (C.D. Cal. July 10, 2013). *Eberts* holds that when the community in a marriage pays down principal, the community may receive a dollar-for-dollar reimbursement as well as a *pro tanto* (as far as it can go) share of the property's appreciation from the date of the marriage to the date of the separation. The Court therefore evaluates whether Howard demonstrated that community property or her own separate property was used to pay down the principal on the Huntington Beach home.

- 8 -

As a preliminary matter, the Court divides its analysis into two time periods: 1) the period between when Howard and Defendant were married on April 2, 2006 and when the purported Interspousal Transfer Grant Deed ("ITGD") was executed on November 1 of that year; and 2) from November 2, 2006 to the present.

**1. Howard Holds no Community Property Interest in the Huntington Beach Home for the period between April 4 and November 1, 2006.**

Even if community assets were used between April 4, and November 1, 2006 to pay down the principal on the note for the Huntington Beach home, the ITGD, if valid, would operate to transfer Howard's community interest in that property back to Defendant, as the parties have acknowledged. Upon consideration of the evidence adduced before and during the hearing in this matter, the Court finds that the ITGD is valid. First, Rehus has introduced a copy of the ITGD which purports to bear Howard's signature, bears a notary seal and date of November 1, 2006, and purports to transfer any interest Howard has in the Huntington Beach property as of that date to Defendant.

Second, the parties have established, and the Court accepts, that Lauren A. Turk, whose name, signature and notary seal appear on the document, was a licensed notary in Orange County, California at the time the document was executed. Though counsel for both claimants proffered their good faith efforts to locate Ms. Turk and or her notary log book, in which by law she would have been required to collect the declarant's signature and government identification to verify identity, neither was able to do so. Howard therefore is unable to overcome the legal presumption that it is her signature on the ITGD. *See Related Urban Management Co. v. Ramy*, 2009 WL 4285610 *1 (Cal. App. 2nd, Dec. 2, 2009) (under California law, a notarized signature gives "rise to the presumption that the signature was authentic"); Cal. Evid. Code, § 1451.

Third and finally, at the hearing Rehus presented evidence from questioned document examiner Larry R. Stewart as to his expert opinion that the signature on the ITGD most likely was Howard's. Howard presented no evidence beyond her own denial

in controversion. Evaluating all the evidence before it, the Court concludes by a preponderance of evidence the ITGD was authentic and valid, and thus Howard transferred to Defendant any community property interest she had accrued in the Huntington Beach property through transmutation between April 4 and November 1, 2006. She cannot now claim such interest for that period.

### 2. Howard has Failed to Demonstrate a Community Property Interest in the Huntington Beach Home for the Period between November 1, 2006 and the Present.

Although Howard transferred any community property interest she had in the Huntington Beach home up to November 1, 2006, the ITGD had no effect on any transmutation that occurred as a result of the use of community assets to reduce principal on the note after that date. At the evidentiary hearing in this matter, the Court invited the parties to brief the issue of whether an ITGD grants or conveys a future interest absent warranty. As Rehus acknowledges in her letter brief (Doc. 240), the ITGD does not supersede the interests derived from any community contribution made after the date of the ITGD. *See In re Marriage of Kushesh and Kushest-Kaviani*, 27 Cal. App. 5th 449, 456 (2018). Thus, if Howard could prove that her separate property was used to pay down the principal on the Huntington Beach property after November 1, 2006, then a community property interest in the amount of the principal reduction, as well as a *pro tanto* share of appreciation in the property thereafter, would be created via transmutation. *See* Cal. Fam. Code § 2640(b).

To prove such contribution of Howard's separate property, she must show "substantial evidence" of same. *In re Marriage of Braud*, 45 Cal. App. 4th 797, 823-4 (1996). The showing requires "specific records reconstructing each separate and community property payment as it occurs." *Id*. The court in *Braud* specifically provided that proof of the use of a spouse's separate or community property

> cannot be established by mere oral testimony of intent or by records that simply total up all separate property funds

- 10 -

> available during a relevant period and all the separate expenditures during that period; such records do not adequately trace to the source of the purchase at the time it was made.

*Id*. at 823.

Applying this standard, the Court finds Howard has not proven by a preponderance of evidence or by substantial evidence that her separate funds were used to pay down the property loan balance. Howard asserted in her Motion for Summary Judgment that Defendant had no income at the time and therefore her separate funds must have been used to pay the loan on the Huntington Beach property. But as the Court observed in its prior Order, that bare and unsupported assertion was inadequate to justify summary judgment on the point. Thus the Court ordered an evidentiary hearing at which it indicated Howard would need to provide proof of such payments of separate property toward the loan on the home. At the hearing, Howard testified similarly, but again, such bare assertions are inadequate. Howard also introduced the faces of checks she says are from Defendant's company, Graphicpak Corp., which she testified, without further evidentiary support, had no assets to make good on the checks.

The check faces themselves are inadequate proof of payment of anything, without additional proof that they were ever negotiated or that they were applied to reduce the principal on the secured loan for the Huntington Beach home during the relevant time period. Moreover, even if Howard could show the Graphicpak checks were applied to the debt at issue, her bare testimony that her husband and his company, Graphicpak Corp. had no assets and therefore any money flowing through Graphicpak's accounts must have been stolen from her own company is inadequate speculation as set forth in *Braud*. The Court concludes Howard has failed to prove transmutation of the Huntington Beach property ever occurred and therefore that she gained a property interest in it at any point.

Having so decided this issue, the Court concludes other issues raised by Rehus, including whether Howard surrendered any rights to the property in the handwritten 2012 "property settlement" declaration to the family court, are moot.

### B. The Effect of the Pendency of the Dissolution Action and Orders Issued in that Matter

Although Rehus argued in her summary judgment motion and elsewhere that Howard can have no claim to the funds at issue because she and Defendant are now divorced, the evidence presented at the hearing makes clear that no valid dissolution decree has issued and the dissolution action is still ongoing. As a result, the Court must determine whether, despite its conclusion *supra* that the marital community has no property interest in the Huntington Beach property, prudential or other concerns, such as comity or abstention, dictate that the Court should withhold judgment in this matter in deference to the Orange County Family Court in the remainder of the matter before it.

Of particular importance are two orders in Case No. 14D004924: 1) family court Judge Franz E. Miller's June 5, 2018, order that Defendant "not sell the property pending further order of the court" (Doc. 222-5 at 3), which Defendant appears to have wholly disregarded by selling the Huntington Beach home less than two weeks later; and 2) family court Commissioner Paul D. Minerich's August 8, 2019 order directing that "all proceeds stemming from the escrow and/or the sale of the property received by either party is to be paid into an interest bearing trust account [and] funds are only to be disbursed by written agreement of the parties or by a court order." (Tr. Exh. Rehus 14H.) The Court is sensitive to the concern that its decision disposing of the funds at issue here should not encroach on the authority of the family court to dispose of the issues before it in the dissolution matter. It will avoid taking actions that would interfere with orders issued by the family court that are still necessary to the remining decisions to be made in that matter. Upon close inspection of the issues and law, however, and for the reasons set forth below, the Court concludes that its disposition of the funds at issue will not affect what remains of the family court action.

As set forth in detail in the Factual Background Section above, upon learning that Defendant had sold the Huntington Beach property to the Caricchios, Howard petitioned the Orange County Family Court on August 20, 2018 for an emergency Order giving her

exclusive temporary use, possession and control of the Huntington Beach home (Tr. Exh. Rehus 14), and upon receiving it, she posted it on the exterior of the home two days later. (Tr. Exh. Rehus 17G.) In response, on September 4, 2018, the Caricchios filed their quiet title and declaratory judgment action, setting forth in detail Howard's contention that she had a community property interest in the Huntington Beach property and seeking a declaration that she had no such interest. (Tr. Exh. Rehus 17 at 4, 5, 7, 8.) As set forth above, Howard failed to appear, respond or defend, and the Orange County Superior Court civil division entered default judgment against her on the Caricchios' claims and all issues they raised in the Complaint. (Tr. Exh. Rehus 18.) Howard's attempt to set aside the default judgment was denied and the judgment became final.

Under California law,

> [a] judgment by default is as conclusive as to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on allegations denied by the answer. . . . Such a judgment is *res judicata* as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.

*Fitzgerald v. Herzer*, 78 Cal. App. 2d 127, 131-32 (1947).

As the Court noted above, the Caricchios very specifically tendered to the Orange County court the issue of whether Howard had any community property interest in the Huntington Beach property. Their allegation that "at all times prior to the sale of the property to [the Caricchios], record title to the property was held solely by Robert Berger as a single man or as a married man as his sole and separate property," and they disputed Howard's claim of a community property interest in the home. (Tr. Exh. Rehus 17 at 4.) Then they expressly sought "an adjudication that Plaintiffs [] took the property free and clear" of Howard's community property claim of interest in it as to both the quiet title and declaratory judgment claims. (Tr. Exh. Rehus 17 at 6-7.) Finally the complaint prayed "for an adjudication that [Howard had] no right, title, estate, lien of interest in the Property" and

"a declaration [] consistent with Plainitffs' contentions and allegations as set forth herein." (Tr. Exh. Rehus 17 at 8.)

    The Court must conclude, in light of the specificity of the allegations in the complaint, that the Caricchios tendered and aptly pleaded to the Orange County court's civil division the precise issues Howard raised in this action, and—as importantly for purposes of this analysis—raised or intended to raise in the still-pending family court action regarding disposition of property interests. Thus, the default judgment in the Caricchios' quiet title and declaratory action is conclusive as to the issue of whether Howard had any community property interest in the Huntington Beach home, and she is estopped from denying those allegations and the civil court's findings in this action and in the Orange County family court proceeding. The Court understands Howard would have preferred to contest the issue of whether she had a community property interest in the Huntington Beach home in the family court action, where she and her former counsel were engaged, rather than in a forum of the Caricchios' choosing. It also recognizes that her and counsel's preparation and intent to contest the issue in family court was delayed by Defendant's incarceration and his action in selling the home, which drove the Caricchio action. But once the Caricchios filed their action, which they were entitled to do, and served her with process, Howard was obligated to appear, answer and contest the issue there or suffer the consequences of default, as set forth 75 years ago in *Fitzgerald*.

    Because Howard is estopped from raising the community property issue in the family court, this Court concludes there is no comity issue or danger of violating any abstention principle. Were the issue to return to the family court, it would be required under *Fitzgerald* to follow the finding of the civil court in the Caricchio matter and adjudicate the home as Defendant's sole and separate property. As a result, the family court would vacate its June 5, 2018 order prohibiting the sale of the home, if that order were still in force. Relatedly, the family court's August 8, 2019 order requiring any party receiving proceeds from the sale of the property to deposit them in a trust account maintained by counsel, and not disburse them absent a court order lacked enforceability at the time it was

entered, because Defendant had sold the property and gifted away the proceeds more than a year prior. The family court may well take issue with Defendant's initial apparent disobedience of its no-sale order, and may levy sanctions for that disobedience, but in light of the adjudication of the home as Defendant's separate property by default, Defendant ultimately was found to have the right to alienate the property, and there was no order freezing the proceeds until more than a year after he did so and gifted the proceeds away.

As a result, the issue of whether the dissolution proceeding is still pending is moot for purposes of the rulings this Court must make. This also is true of the questions surrounding the meaning of the family court's November 6, 2018 order with handwritten addition stating the "matter is moot pursuant to the verbal stipulation of both attorneys," which this Court previously raised for briefing and evidentiary presentation.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner Howard has failed to demonstrate by a preponderance of evidence that she has a legal right, title or interest in the property—that is the $232,511.60 representing the residuum of the sale proceeds from the Huntington Beach property after forfeiture of fraud proceeds to the United States. It also finds that Petitioner Rehus has demonstrated by a preponderance that she has such a legal right, title and interest in that property. Therefore,

…

…

…

…

…

…

…

…

…

**IT IS ORDERED** denying Howard's Petition Asserting Legal Interest in Subject Property (Doc. 167).

**IT IS FURTHER ORDERED** granting Rehus's Petition pursuant to 21 U.S.C. § 853(n), captioned as a Notice of Claim (Doc. 157).

**IT IS FURTHER ORDERED** that the Clerk of Court disburse from its registry account the $232,511.60 remitted by the United States Marshal Service in this matter to counsel for Rehus.

**IT IS FURTHER ORDERED** staying the directive to the Clerk of Court for 14 days from entry of this Order to allow Howard to consider any appellate rights.

Dated this 20th day of December, 2022.

Honorable John J. Tuchi
United States District Judge

(cc: Finance)